UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARILYN WILLARD, ET AL.                                              CIVIL ACTION

VERSUS                                                               NO.03-2956

UNITED STATES of AMERICA                                             SECTION "K" (3)

ORDER

Before the Court is defendant's Motion To Dismiss, Or For Summary Judgment (Rec.Doc. 41).  An opposition was filed by intervenor, Travelers Indemnity Company of Illinois ("Travelers").  Plaintiffs adopted the opposition filed by Travelers.  Having considered the pleadings, memoranda, affidavits, the relevant contracts, the Court denies defendant's motion.

BACKGROUND

Plaintiffs, Marilyn Willard, individually and on behalf of her minor son and deceased husband have sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq*, following Mr. Willard's fall from a Coast Guard owned tower affixed to the Governor Nicholls wharf in New Orleans, Louisiana.  The tower monitors vessel movements along the Mississippi River and is part of the U.S. Coast Guard's Vessel Traffic Service (VTS) for the port of New Orleans.  In 1996, Congress directed the Coast Guard to undertake an analysis of future VTS system requirements.  The Coast Guard's Ports and Waterway Safety System (PAWSS) project was developed. In 1998, the Coast Guard hired Lockheed Martin with

the assistance of subcontractors to install a new system of radar and other sensors connected to a centralized control center.  *See* Govt's Exhibit E, Contract between Lockheed and the Government.  The Contract called for the installation of a new radar atop the Governor Nicholls Light tower.  On or about January 27, 2000, Lockheed subcontracted with TANO Corporation to "provide technical services to perform corrective maintenance on the installed systems and equipment."  *See* Deft's Exhibit G, Purchase Order between Lockheed and TANO.  On October 25, 2001, Mr. Willard, a TANO employee, fell from the tower while conducting repairs associated with the Lockheed subcontract.  The Court dismissed Lockheed (Rec. Doc. 25) and the Board of Commissioners of the Port of Orleans (Rec. Doc. 62) as defendants.  Thus, the only defendant remaining is the United States Government.  Travelers intervened for reimbursement of Longshoremen and Harbor Workers' Compensation benefits paid to Marilyn Willard.

## ANALYSIS

Plaintiffs' Complaint against the Government focuses on the tower being unreasonably defective and dangerous because the hatchway cover was not hinged; the tower platform lacked the requisite warnings; the tower ladder lacked a protective cage; and other defects and hazards, including, but not limited to, a rusted and/or inoperable hatchway cover and no protective barricade to prevent falls through the hatchway opening.  *See* Complaint ¶ 8.  Plaintiffs contend that the Coast Guard is liable to the plaintiffs for acts of negligence for failure to inspect and maintain the tower; failure to make necessary repairs to the tower; failure to warn; and failure to provide a reasonably safe workplace.  *Id*. at ¶ 9.  Plaintiffs allege that at all times, the Coast Guard had the care, custody, and control of the radar tower which was used for navigational safety of vessel traffic on the Mississippi River.  *Id*. at ¶ 3.  Defendant in its motion bases its motion to dismiss/alternatively, motion for summary judgment presents three arguments: 1) that

plaintiffs' claims are barred by the independent contractor exception to the FTCA; 2) that essential elements of a negligence action against the government are lacking; and 3) strict liability claims against the government are barred under the FTCA.

It is well established that the United States, as a sovereign, is immune from suit, except when it consents to be sued. *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961 (1983). Congress waived the federal government's sovereign immunity with the passage of the Federal Tort Claims Act ("FTCA"). The FTCA subjects the United States to liability for injuries "caused by the negligent or wrongful act or omission of any employee of the government . . . ." 28 U.S.C. § 1346(b). "Employees of the government includes employees of any federal agency . . . ." 28 U.S.C. § 2671. A federal agency "does not include any contractor with the United States." 28 U.S.C. § 2671. Therefore, the United States is not liable for the negligent acts of an independent contractor. *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

## A. Independent Contractor Exception

*1. 12(b)(1) Motion to Dismiss Standard*

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of a federal district court. A claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim. *See Home Builders Assoc., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998). A 12(b)(1) motion may be appropriate when a plaintiff's claim is barred by sovereign immunity, as well as in the typical situation where a defendant alleges that there is no diversity of citizenship between the parties, jurisdictional amount, and/or the plaintiff's claim does not involve a federal question. See 5A Charles A. Wright & Arthur R.

Miller, *Federal Practice and Procedure,* § 1350 (2d ed.2003).  Because federal courts are courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See e.g., Stockman v. Federal Election Comm'n,* 138 F.3d 144, 151 (5th Cir.1998).  Thus, a federal court must dismiss an action whenever it appears that subject matter jurisdiction is lacking. *Stockman*, 138 F.3d at 151.  In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir.2001).  Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir.1986). Uncontroverted allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As,* 241 F.3d at 424.

2. *Contract Between Lockheed and the Government*

The Government argues that it delegated all safety responsibility to Lockheed in its contract with Lockheed, and thus, claims against it are barred by the independent contractor exception. *See* Govt's Exhibit E, Contract between Lockheed and the Government.  The Fifth Circuit has frequently noted that under Louisiana law, 'the relationship between the principal and the independent contractor is in large measure determined by the terms of the contract itself.' *LeJeune v. Shell Oil Company,* 950 F.2d 267, 269 (5th Cir.1992).  A principal's duty to an independent contractor is defined by the terms of its contract. *Graham v. Amoco Oil Company*, 21 F.3d 647 (5th Cir.1994).  Thus, the Court will examine the Contract between Lockheed and

the Government.[1]

Lockheed governed the installation and testing of a new radar atop the Governor Nicholls Tower. *See* Exhibit E, Task Order No. 3, at p. 267. The scope included the upgrading and testing of a new radar system. The Contract under 3.5.4 Subtask 4–Governor Nicholls Site Modification specified:

> "[Lockheed] shall use the Coast Guard site at Governor Nicholls Light for installation of a radar that meets the requirements of the Specification. [Lockheed] shall improve the site including tower and/or shelter as necessary. [Lockheed] shall prepare all documentation and permit application. [Lockheed] shall connect the new radar to the VTC using Coast Guard furnished communication links . . . For Subtask 4, [Lockheed] shall meet all the requirements of the following paragraphs of the [Statement of Work].

In addition, the Contract incorporated the following Federal Acquisition Regulations ("FAR"). Under 48 CFR Ch.1, 52.236-7, "[t]the Contractor shall without additional expense to the Government be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations **applicable to the performance of the work**." (emphasis added). Under 48 CFR Ch.1, 52.236-13,

> (a) The Contractor shall provide and maintain work environments and procedures which will (1) safeguard the public and Government personnel, property, materials, supplies, and equipment exposed to Contractor operations and activities . . . (b) For these purposes on contracts for construction or dismantling, demolition, or removal of improvements,

---

[1] Travelers argues that the FARs contained in the contract between Lockheed and the Government were not incorporated in TANO's contract with Lockheed. The Court need not consider Travelers' arguments because the pertinent issue of whether the Government delegated all safety responsibility to Lockheed depends upon the Contract between the two.

>the Contractor shall (1) Provide appropriate safety barricades, signs, and signal lights; (2) Comply with the standards issued by the Secretary of Labor . . . (3) Ensure that any additional measures the Contracting Officers determines to be reasonably necessary for the purposes are taken.

48 CFR Ch. 1, 52.245-2 provides in pertinent part: "2(e) Property Administration. (1) The Contractor shall be responsible and accountable for all Government property provided under this contract and shall comply with Federal Acquisition Regulation (FAR) subpart 45.5, as in effect on that date of this contract."  FAR subpart 45.509 provided, "The Contractor shall be responsible for the proper care, maintenance, and use of Government property in its possession or control from the time of receipt until properly relieved of responsibility, in accordance with sound industrial practice and the terms of the contract."  Furthermore, Lockheed was obligated to procure and maintain minimum amounts of Worker's Compensation, Auto liability, and Comprehensive General Liability insurance during the entire period of performance of the contract.

Despite the language granting a considerable amount of responsibility to Lockheed, Lockheed did not have the duty to correct any alleged defects in the tower itself.  Lockheed is responsible for care and maintenance and use of Government property in its possession or control.  Lockheed is required to procure insurance.  Lockheed is required to install a radar that meets certain requirements and to improve the site including the tower and or shelter as necessary.  However, the duty to correct alleged defects, specifically the ladderway floor opening of the tower, that apparently existed before the contract with Lockheed was not delegated to Lockheed. Lockheed was hired for installation and upgrading of the radar systems; not to maintain the tower or to handle the overall safety of the tower.  The defendant cites

*Schneider v. United States*, 734 F.Supp. 239 (E.D.La. Feb. 20, 1990) wherein the Department of Housing and Urban Development (HUD), and the Federal Savings and Loan Insurance Corp.(FSLIC) could not be held liable under the FTCA, for a defect in the railing of an apartment building.  The Court found HUD no longer had care, custody, or garde of the property and that FSLIC had hired private, independent contractors to act as "asset managers" or day-to-day supervisors of the property it received.  *Id*. at 247-248.  The Court further found that pursuant to the contract, FSLIC had delegated its duty to repair and/or warn to the subcontractors.  The facts of the case herein are distinguishable from those in *Schneider*.  Here, the Government had control of the tower and had not contracted with Lockheeed or its subcontractors to maintain the tower or act as managers for the tower.

**B. Liability of the United States via Negligence Of  Its Own Agents and Employees**

As previously stated, the FTCA subjects the United States to liability for injuries "caused by the negligent or wrongful act or omission of any employee of the government . . . ." 28 U.S.C. § 1346(b).  Thus, the United States may be liable for the breach of a duty owed to an employee of an independent contractor.  *Lathers v. Penguin Industries, Inc*., 687 F.2d 69, 72 (5th Cir.1982).  The government's liability for the negligence of its employees is considered "in the same manner and to the same extent as a private individual under like circumstances . . ." 28 U.S.C. § 2674.  In determining whether a private person would be liable, the court must look to the law of the state where the alleged act or omission occurred.  28 U.S.C. § 1346(b).  It is undisputed that Louisiana law governs in this case.

*1. Summary Judgment Standard*

The Court has subject matter jurisdiction under this claim because the federal government has waived its sovereign immunity for suits against the United States for negligent

acts of its employees, pursuant to 28 U.S.C. §§1346(b), 2671.  Thus, the issue under this claim is not one involving Rule 12(b)(1) of the Federal Rule of Civil Procedure.  To resolve this issue, the Court must decide the defendant's alternative motion for summary judgment.  *Conner v. United States*, 967 F.Supp.894, 899 (M.D.La.1997).   Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322. "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment.  Fed.R.Civ.P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial.  *Id.*  When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts" are tasks for the trier-of-fact. *Anderson*, 477 U.S. at 255. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc*. 828 F.2d 291, 294 (5th Cir.1987).

2. *Duty*

Because Plaintiffs' Complaint asserts a negligence claim against the Government, the Court must determine duty. Under Louisiana Civil Code article 2315, the primary question that must be asked is whether the defendant owed a duty to the plaintiff. *See* La. Civ.Code Art. 2315; *Mart v. Hill,* 505 So.2d 1120 (La.1987). Duty is a question of law. *Roberts v. Benoit*, 605 So.2d 1032 (La.1991). The determination whether or not a particular defendant owed a duty to a particular plaintiff is imperative because "[i]t is a fundamental principle of tort law that there can be no negligence unless there is first a duty." *Kerr-McGee Corp. v. Ma-Ju Marine Services,* 830 F.2d 1332, 1340 (5th Cir.1987). "Generally, a person owes a duty to exercise reasonable care to protect others against the foreseeable risks of his misconduct." Frank L. Maraist and Thomas C. Galligan, *Louisiana Tort Law,* § 5-1 at 101 (1996).

The defendant argues there is no duty on the part of the United States toward Don Willard for the following reasons. First, one that employs an independent contractor is not normally under a duty to take affirmative action to protect the employees of that independent contractor from injury in the course of the contracted for work, and in this instance, the Government argues that the Cost Guard contractually delegated the duty for providing a safe work place to Lockheed under the FAR provisions. The Government's second argument is that for a negligence claim, the plaintiff must show the proper owner was "the party who actually created the dangerous condition . . . or a party who knew of the dangerous condition and had a

duty to correct it but failed to do so." *Schneider v. United States*, 734 F.Supp.239, 248 (E.D.La.1990).[2]  The Government argues that before Don Willard's fall, there had never been a claim, complaint, or accident by anyone or any entity involved with this tower.  The Government also argued that Don Willard had climbed this tower for years prior to his fall.

Travelers argues that the contract, and the Federal Acquisition Regulations ("FARs") therein, did not effect a complete shift of all responsibility for safety issues to the contractor and that the Coast Guard was required to maintain oversight of safety issues with respect to the contract between it and Lockheed.  Travelers further contends the daily operative control of the tower remained in the hands of the Coast Guard and that TANO's employees conducted only periodic maintenance and repair of the VTS system located on that tower.  Travelers contends that under no interpretation of the contract was the contractor or the subcontractor liable for any defects in the tower.  As to whether the Government had any knowledge of the alleged defect, Travelers argues the Coast Guard had care, custody, and control over the tower for an extended period of time prior to the execution of the contract and prior to the accident in question.  Furthermore, Travelers attaches the report of Frederick T. Elder, Ph.D., who states that the tower's ladder and hatch were defective in design and construction, in violation of certain OSHA regulations.

*3. Duty as Landowner under 2315 and 2317*

Louisiana Civil Code Article 2317 provides that,

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which

---

[2]*Schneider* was decided in 1990, prior to the amendments made in La. Civ. Code Art. 2317.  *Schneider* cites to *Dusenberg v. McMoRan Exploration Co.*, 458 So.2d 103, 105 (La. 1984), which also was under the strict liability regime for property owners.

> we have in our custody. This, however, is to be understood with the following modifications.

The modification referred to in article 2317 is a significant one, embodied in Louisiana Civil Code article 2317.1, which requires that,

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew, or in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care ...

"As a result of the Louisiana Legislature's adoption of La. C.C. art. 2317.1, fundamental changes to the strict liability concept have occurred, which changes now require plaintiffs who allege strict liability to prove that the defendant knew or should have known of the vice or defect." *Kendall v. Weingarten Realty Management Co.,* 769 So.2d 171, 173 (La.App. 2 Cir.2000). With the imposition of the knowledge requirement of article 2317.1, Louisiana's regime of liability without fault was effectively terminated. *Jackson v. Samedan Oil Company,* 2000 WL 343361, *6 (E.D.La.2000); Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law,* § 14-1. In other words, by requiring prior knowledge by the defendant in both negligence and strict liability actions, "the legislature dramatically returned the articles to negligence standards with explicit language." William E. Crawford, *Tort Law,* 12 Louisiana Civil Law Treatise at §25.3 at 464. Indeed, "under either a theory of negligence or strict liability of recovery, a plaintiff must prove duty and causation...." *Jackson v. Samedan Oil Company,* 2000 WL 343361, in commenting upon the effect of civil code article 2317.1, the Louisiana Supreme Court stated:

We have noted that the sole distinction between the burden of proof necessary to recover under

a negligent action [sic] based on La. Civ.Code art. 2315 versus a strict liability action based on La. Civ.Code art. 2317 was that in the former the plaintiff had the additional burden of proving the defendant's scienter, i.e., that the defendant "knew or should have known" of the defect.... La. Civ.Code art. 2317.1, added in 1996, eliminated that distinction. *Dupre v. City of New Orleans,* 765 So.2d 1002, 1007, note 5 (La.2000) (citations and internal citations omitted). *Lasyone v. Kansas City Southern R.R.,* 786 So.2d 682, at *6, fn. 9, 2000-2628 (La.4/3/01).

Under the new scheme imposed by article 2317.1, "plaintiffs who allege negligence under strict liability must prove the following elements: (1) that the defendant knew or should have known of the vice or defect; (2) that the damage could have been prevented by the exercise of reasonable care; and (3) that the defendant failed to exercise such reasonable care." *Greenhouse v. C.F. Kenner Associates Limited Partnership,* 723 So.2d 1004, 1007 (La.App. 4 Cir.1998) (citations omitted). In other words, a plaintiff pursuing a 2317.1 cause of action must show that "not only that the thing had a vice or defect, but also that the custodian was negligent." *Dennis v. Bud's Boat Rental,* 987 F.Supp. 948, 952 (E.D.La.1997). The Court recognizes that the FTCA precludes liability of the United States based on strict liability in tort. *Lathers v. Penguin* Industries, Inc. 687 F.2d 69 (5th Cir.1982)(citing *Aretz v. US*, 604 F.2d 417, 427 (5th Cir.1979)). However, the claims against the Government in this case incorporate negligence principles and are not longer considered strict liability in the traditional sense. "[I]n effect, the 1996 amendments overruled *Loescher* and its progeny, replacing its strict liability concept with a negligence based rule." *Myers v. Dronet*, 801 So.2d 1097, 1105 (La. App. 3 Cir. 6/22/01).

In applying the elements under 2317.1, it is undisputed that the Government, through the Coast Guard, was the owner of the tower on Governor Nicholls Wharf. Brian Judge, a Commander in the United States Coast Guard and currently serving as the Acting Chief, Office

of Claims and Litigation, stated the Coast Guard owns the tower and that it is responsible for maintaining the tower. *See* Plaintiff's Opp. to deft's MSJ, Exhibit A. According to Commander Bradley Ripkey, Supervisor for the Tower Engineer at Coast Guard Civil Engineering Unit located in Miama, Florida, the Unit is "responsible for matters relating to the engineering, safety, repair and maintenance" of the tower. *See* Govt's Exhibit R. Therefore, it is clear that the Government owned and maintained the tower. Plaintiffs' Complaint focuses on the alleged defects and dangers associated with the tower. *See* Rec. Doc.1 ¶ 8(a)(d). Thus, the critical question before the Court is whether the defendant knew or should have known of the alleged defects in the tower. Dr. Elder in his report provided by Travelers opined that the platform opening should have been guarded as required by 29 CFR 1910.23 which provides in relevant part, "(2) Every ladderway floor opening or platform shall be guarded by a standard railing with standard toeboard on all exposed sides . . . with the passage through the railing either provided with a swinging gate or so offset that a person cannot walk directly into the opening." Although the Government contends the regulation is not applicable it has given the Court no legal authority for its contention. The Court has reviewed the regulation and is facially applicable. Therefore, it certainly raises a question of material fact.

In its Reply Memorandum, the Government states the Coast Guard was not cited by OSHA for not having a cage when it inspected the sight following the accident. However, that OSHA did not cite the Government for not having a cage does not satisfy the question raised in the Court's mind regarding the use of a "standard railing" required under 29 CFR 1910.23. The Court finds that there is a genuine issue of material fact as to whether the government knew or should have known of the alleged defect in the design of the tower regarding the opening to the ladderway. The Government was obviously aware that the hatch cover was not caged, hinged,

or signed. There is no evidence that any party but the government had this responsibility. Therefore, the Court finds there is a genuine issue of material fact as to whether there should have been some safety measures implemented regarding the tower despite there having never been a complaint or accident and whether there is a genuine issue of material fact as to whether the defendant should have known to take necessary measures.

**C. Conclusion**

Plaintiffs alleged the death of Don Willard was caused by defects in the tower itself–the hatchway cover, the tower platform, and the tower ladder–all within the custody and control of the Government. The Fifth Circuit has stated, "This Court has consistently held . . . that a principal . . . who hires independent contractors over which he exercises no operational control has no duty to discover and remedy hazards created by its independent contractors." *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 437 (5th Cir.1984). Plaintiffs herein are not bringing suit for any alleged hazards created by TANO or Lockheed, but those allegedly created by the Government, through its failure to maintain the tower itself. Furthermore, the Court finds that the Government did not delegate this responsibility to its contractors.

The Court recognizes the Government is not responsible for the negligence of Lockheed or of TANO or of its employees; however, as to the Government's **own** negligence, the Court finds there exists an genuine issue of material fact, which precludes the granting of summary judgment.

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that defendant's Motion To Dismiss, Or For Summary Judgment (Rec.Doc. 41) is **DENIED**.

New Orleans, Louisiana, this   27th   day of July, 2005.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**